# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LARCE SPIKES,**<br>        **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-8164** |
| **DR. CASEY MCVEA, ET AL.,**<br>        **Defendants** | **SECTION: "E"(2)** |

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed by Defendants Dr. Casey McVea, Paula Stringer, Robin Bowman, Lesley Wheat, and Wendy Seal.[1] Plaintiff Larce Spikes opposes the motion.[2] Defendants filed a reply,[3] and Plaintiff filed a sur-reply.[4] For the reasons that follow, the motion for summary judgment is **GRANTED IN PART AND DENIED IN PART.**

## PROCEDURAL BACKGROUND

Plaintiff Larce Spikes is a former inmate at the Rayburn Correctional Center ("Rayburn") in Angie, Louisiana. He alleges his broken hip went misdiagnosed as a pulled muscle for forty-three days, and that after undergoing an operation to mend his hip, the medical staff at Rayburn failed to provide him proper medical treatment, thereby exacerbating and prolonging his pain. In total, Spikes alleges he was "subjected to nearly nine months of continuous deliberately indifferent medical care."[5]

In his complaint, Spikes brings three § 1983 claims based on violations of his Eighth Amendment rights and a state law claim for intentional infliction of emotional

---

[1] R. Doc. 74.
[2] R. Doc. 84.
[3] R. Doc. 102.
[4] R. Doc. 105.
[5] R. Doc. 21.

distress against Defendants, each in their individual capacities.[6] On January 22, 2018, Defendants filed a motion to dismiss Spikes' claims, arguing they are entitled to qualified immunity.[7] On May 7, 2018, the Court denied Defendants' motion, finding Spikes alleged violations of a clearly established constitutional right.[8] On June 5, 2018, Defendants filed a subsequent motion to dismiss Plaintiff's state law based claims and all § 1983 claims arising from events that took place before August 23, 2016.[9] On July 6, 2018, the Court granted the motion with respect to the state law claims based on Louisiana Civil Code article 2315 because they are barred by the Eleventh Amendment.[10] The Court applied the continuing violation doctrine and denied the motion with respect to the § 1983 claims.[11]

Plaintiff's remaining Eighth Amendment claims under 42 U.S.C. §1983 are as follows: (1) count one against Dr. McVea for establishing unconstitutional procedures and policies related to inmate access to appropriate medical care,[12] (2) count two against Dr. McVea and Nurse Wheat for failing to provide policies and procedures and failing to train and supervise their subordinates,[13] and (3) count three against all Defendants for being deliberately indifferent to Spikes' serious medical needs.[14]

On November 14, 2018, Defendants filed the instant motion for summary judgment, arguing they are entitled to the defense of qualified immunity because they

---

[6] The Court notes that in his first amended complaint Spikes alleges Defendants' conduct violated both his Fifth and Eighth Amendment rights. In his opposition to Defendants' motion to dismiss, however, Spikes concedes that his claims based on the Fifth Amendment must be dismissed. R. Doc. 31 at 1 ("Plaintiff notes that because he was a sentenced prisoner during the relevant time period, he will agree to a stipulation that his claims are only brought pursuant to the Eighth Amendment of the United States Constitution, not the Fifth Amendment.").

[7] R. Doc. 24 at 3.

[8] R. Doc. 40. The Court granted Defendants' motion to the extent Spikes brought claims pursuant to the Fifth Amendment. *See id.* at 7 n.60.

[9] R. Doc. 41.

[10] R. Doc. 46.

[11] *Id.*

[12] R. Doc. 21 at ¶¶ 42-44 (Count 1).

[13] *Id.* at ¶¶ 45-49 (Count 2).

[14] *Id.* at ¶¶ 50-55 (Count 3).

were not deliberately indifferent to Plaintiff's medical needs.[15] Alternatively, Defendants reassert their argument that Plaintiff's claims are time-barred.[16] Defendants move the court to enter judgment in their favor as a matter of law.

## FACTS[17]

Inmates at the Rayburn Correctional Center are permitted to make a request for medical care during regular sick call, from 6:00 p.m. to 6:30 p.m. on Sunday through Thursday evenings.[18] Inmates may also "self-declare sick calls" or "self-declare emergencies" for conditions that cannot wait.[19] After examining an inmate during a sick call, the nurse submits a Healthcare Request Form to the doctor to review the next business day.[20] Nurses cannot and do not make an ultimate medical diagnosis but can reach a working "nursing diagnosis" based on their objective and subjective assessment, training, and common sense.[21] Nurses have some initial discretion based on the apparent seriousness of an inmate's complaints or injuries.[22] A nurse may call the doctor at any time for immediate assistance if the nurse perceives that an inmate is having a life-threatening emergency.[23]

The doctor reviews the Healthcare Request Forms when he arrives in the morning.[24] In doing so, the doctor decides whether the inmate faces a life-threatening situation the nurse failed to identify; if so, he will see the inmate immediately.[25]

---

[15] R. Doc. 74.
[16] *Id.* The Court addressed this argument in its order on Defendants' second motion to dismiss, finding the continuing violation doctrine applies in this case. R. Doc. 46 at 15-17.
[17] The facts in this section are undisputed unless noted otherwise.
[18] R. Doc. 74-1 at 1; R. Doc. 86-1 at 1.
[19] R. Doc. 74-1 at 1; R. Doc. 86-1 at 1.
[20] R. Doc. 74-1 at 2; R. Doc. 86-1 at 2.
[21] R. Doc. 74-1 at 2; R. Doc. 86-1 at 2.
[22] R. Doc. 74-1 at 2; R. Doc. 86-1 at 2.
[23] R. Doc. 74-1 at 2; R. Doc. 86-1 at 2.
[24] R. Doc. 74-1 at 2; R. Doc. 86-1 at 2.
[25] R. Doc. 74-1 at 3; R. Doc. 86-1 at 2.

Otherwise, the doctor will classify any non-life threatening concern as either an "urgent" or "routine" call out, and the request for an appointment will be entered into the system accordingly.[26] Urgent appointments are scheduled before routine appointments.[27] The doctor may make a "preliminary diagnosis" and issue certain orders for treatment while inmates wait for their appointment based on the records and nurses' orders.[28]

On June 30, 2016 Plaintiff injured himself while "walking the yard."[29] Plaintiff experienced sudden pain on the inner and outer portions of his leg, which prevented him from picking up his leg.[30] Plaintiff declared an emergency sick call and was escorted to the infirmary in a wheelchair.[31] Nurse Paula Stringer assessed Plaintiff that day.[32] Nurse Stringer informed Plaintiff that he probably pulled a muscle and gave him Tylenol and muscle rub, pursuant to a standing order for a muscle strain.[33] Nurse Stringer completed a Healthcare Request Form for the doctor to review on his next working day, which was July 5, 2016, due to the holiday weekend.[34] The Healthcare Request Form documents that Plaintiff came to the infirmary in a wheelchair, complaining of pain to his right groin after lifting weights.[35] The form notes no apparent hernia, assesses the complaint as a muscle strain, and plans for 200mg of ibuprofen for five days, referencing the standing order of Dr. McVea.[36]

---

[26] R. Doc. 74-1 at 3; R. Doc. 86-1 at 2.
[27] R. Doc. 74-1 at 3; R. Doc. 86-1 at 2.
[28] R. Doc. 74-1 at 3; R. Doc. 86-1 at 2.
[29] R. Doc. 74-1 at 4; R. Doc. 86-1 at 2. *See also* R. Doc. 74-10 at 49-52.
[30] R. Doc. 74-1 at 3; R. Doc. 86-1 at 2.
[31] R. Doc. 74-1 at 4; R. Doc. 86-1 at 2. The parties dispute whether two of Plaintiff's friends, Lamont Richardson and "Cadillac," escorted him to the infirmary or whether only "Cadillac" escorted him. This fact is not material.
[32] R. Doc. 74-1 at 4; R. Doc. 86-1 at 2.
[33] R. Doc. 74-1 at 4; R. Doc. 86-1 at 2.
[34] R. Doc. 74-1 at 5; R. Doc. 86-1 at 3.
[35] R. Doc. 74-1 at 5; R. Doc. 86-1 at 3; *see also* R. Doc. 86-3 at 13. Plaintiff disputes whether this form accurately reflects his complaints and the nurse's assessment.
[36] R. Doc. 74-1 at 5; R. Doc. 86-1 at 3; *see also* R. Doc. 86-3 at 13.

The parties dispute whether Nurse Stringer adequately examined Plaintiff at his initial infirmary visit on June 30, 2016 and whether Nurse Stringer accurately documented his complaints.[37] Nurse Stringer testified that she "could not remember exactly the encounter and what [Plaintiff] said."[38] She testified, "there was no mass when I touched—I would assume, when I touched him that there was no mass felt."[39] When asked whether she recalled touching Plaintiff's right hip area and groin area, she testified that touching the area is "what [she] would formally [sic] do if [she] was looking for a hernia . . . but, him particularly, I can't recall that."[40]

The parties dispute Plaintiff's level of pain and ability to ambulate between his initial infirmary visit with Nurse Stringer on June 30, 2016 and his next infirmary visit on July 5, 2016.[41] Plaintiff testified that he could make his bed in this period only because he was able to stand up and sit back down on one leg.[42] Defendants argue this shows Plaintiff avoided walking but was able to stand up and make his bed.[43] Plaintiff testified that he could not walk at all during those five or six days.[44]

Plaintiff visited the infirmary again on July 5, 2016 and was again examined by Nurse Stringer.[45] Again, the parties dispute whether Nurse Stringer adequately examined Plaintiff and accurately documented his complaints.[46] The parties also dispute whether Plaintiff could walk and whether Plaintiff had full range of motion in his leg at the July 5,

---

[37] R. Doc. 74-1 at 5; R. Doc. 86-1 at 2.
[38] R. Doc. 74-4 at 41.
[39] *Id.*
[40] *Id.* at 42.
[41] R. Doc. 74-1 at 5-6; R. Doc. 86-1 at 2-3.
[42] R. Doc. 74-10 at 64.
[43] R. Doc. 74-2 at 10.
[44] R. Doc. 74-10 at 64.
[45] R. Doc. 74-1 at 5; R. Doc. 86-1 at 3. Plaintiff disputes the assertion that he made the same complaint of pain on July 5, 2016 on the basis that his pain was worse that day. Plaintiff does not dispute that he visited the infirmary that day and was treated by nurse Stringer. *See also* R. Doc. 86-2 at 2.
[46] R. Doc. 74-1 at 5-6; R. Doc. 86-1 at 2.

2016 infirmary visit.[47] The Healthcare Request Form indicates Plaintiff came to the infirmary in a wheelchair continuing to complain of right groin pain, moving to his lateral thigh.[48] The form also notes that Plaintiff complained of increased pain when ambulating but was able to ambulate to the scale without assistance and had full range of motion to his right extremity.[49] Plaintiff argues this record does not accurately reflect his condition at the July 5, 2016 visit because Nurse Stringer did not watch Plaintiff ambulate to the scale or examine him to determine that he had full range of motion.[50] Plaintiff testified he rolled his wheelchair near the scale and jumped up.[51] He stated he "couldn't walk. They tried to get me to weigh myself. I dragged myself to the weight – to weigh myself. I dragged myself and hold onto the thing. I jumped up there on one leg because this leg is literally just, like, dead."[52] In deposition, Nurse Stringer could not recall if she actually observed Plaintiff move to the scale or how she determined he had full range of motion.[53] When asked if anyone was looking at him as he walked to the scale, Plaintiff testified, "no."[54]

Nurse Stringer completed the Healthcare Request Form for the doctor to review and continued to follow what she believed to be the applicable standing order regarding muscle strains.[55] The "healthcare practitioner notes" section notes the ibuprofen 400mg and indicates no further medical intervention required for muscle strain.[56]

---

[47] R. Doc. 74-1 at 5-6; R. Doc. 86-1 at 2-3.
[48] R. Doc. 74-11 at 168; R. Doc. 86-3 at 12.
[49] R. Doc. 74-11 at 168; R. Doc. 86-3 at 12.
[50] R. Doc. 86 at 2-4.
[51] R. Doc. 86-4 at 85.
[52] *Id.*
[53] R. Doc. 74-4 at 48-49.
[54] R. Doc. 86-4 at 85.
[55] R. Doc. 74-1 at 6; R. Doc. 86-1 at 3.
[56] R. Doc. 74-11 at 168; R. Doc. 86-3 at 12.

Plaintiff made another emergency sick call on July 6, 2016 and was examined by Nurse Cindi Williams.[57] The Healthcare Request Form completed by Nurse Williams reflects that Plaintiff complained of right groin pain and notes a pulled muscle on June 30, 2016.[58] The form notes Plaintiff came to the infirmary in a wheelchair, complained of right groin pain since June 30, 2016, and stated, "I can't walk on my leg." The form indicates Plaintiff complained of pain in his right hip, radiating down his leg to the knee and requested crutches.[59] The form indicates Nurse Williams discussed the plan of care with the doctor at that time, and the "health care practitioner notes" section recommends crutches and a bottom bunk duty status for the next seven days, along with a routine call out.[60] The infirmary activity log reflects that Plaintiff was scheduled for an appointment with Dr. McVea after this visit.[61] Following Plaintiff's visit on either July 5 or 6, Dr. McVea placed Plaintiff on regular duty with restrictions, specifically a bottom bunk and crutches, until July 14, 2016.[62]

Plaintiff visited the infirmary for a fourth time on July 14, 2016 and was assessed by Nurse Robin Bowman.[63] The Healthcare Request Form indicates Plaintiff arrived at the infirmary in a wheelchair, continuing to complain of pain in his right lower leg, from

---

[57] R. Doc. 74-1 at 7; R. Doc. 86-1 at 3. *See also* R. Doc. 86-2 at 4.
[58] The parties do not dispute that Nurse Williams completed the Healthcare Request Form. Both parties attach the Healthcare Request Form from Plaintiff's July 6, 2016 visit to their motion/opposition. R. Doc. 74-11 at 166; R. Doc. 86-3 at 11.
[59] R. Doc. 74-11 at 166; R. Doc. 86-3 at 11.
[60] R. Doc. 74-11 at 166; R. Doc. 86-3 at 11.
[61] R. Doc. 74-1 at 7; R. Doc. 86-1 at 3; *see also* R. Doc. 86-3 at 53.
[62] R. Doc. 74-1 at 6; R. Doc. 86-2 at 5. Defendant contends this occurred following plaintiff's July 5, 2016 appointment. Plaintiff contends it occurred following his July 6, 2016 appointment and that the recommendation following the July 5, 2016 appointment was to continue ibuprofen and no further medical intervention required. The parties appear to agree that, at some point, Dr. McVea recommended that Plaintiff receive crutches and a bottom bunk. The medical records reveal that Plaintiff received the order for crutches and a bottom bunk following his July 6, 2016 appointment. R. Doc. 86-3 at 11. The recommendation following Plaintiff's July 5, 2016 appointment was to continue ibuprofen and no further medical intervention required. R. Doc. 86-3 at 12.
[63] R. Doc. 74-1 at 7; R. Doc. 86-1 at 3.

his hip to his thigh, radiating to his groin.[64] Plaintiff filled out part of the form, writing, "My right leg. I can't stand on it or bend it."[65] Nurse Bowman physically examined Plaintiff, felt for any deformity, and noted on the Healthcare Request Form that her palpitation increased Plaintiff's pain.[66] The form also indicates that Plaintiff had made four sick calls at that point.[67] After this appointment, Plaintiff received a temporary no duty status change through July 19, 2016.[68]

Plaintiff visited the infirmary again on July 19, 2016[69] and was again examined by Nurse Bowman.[70] Plaintiff continued to complain of pain to his right hip and filled out the Healthcare Request Form complaining that "my right leg, I can't stand on it or bend it too far."[71] Nurse Bowman informed Plaintiff that Dr. McVea was aware of his situation and that he had a routine call out appointment scheduled.[72] Nurse Bowman completed a Healthcare Request Form, documenting Plaintiff's request for a duty status update and noting Plaintiff's statements that he has crutches in the dorm and cannot work in the field.[73] Dr. McVea reviewed the form and marked that Plaintiff already had an appointment scheduled to see him.[74]

---

[64] Although the parties dispute the steps Nurse Bowman took to transmit the Healthcare Request Form to Dr. McVea for review, the parties do not dispute that Nurse Bowman completed the form. R. Doc. 74-1 at 7; R. Doc. 86-1 at 3. Both parties attach the Healthcare Request Form from Plaintiff's July 14, 2016 visit to their motion/opposition. R. Doc. 74-11 at 165; R. Doc. 86-3 at 10.

[65] R. Doc. 74-11 at 165; R. Doc. 86-3 at 10.

[66] R. Doc. 74-1 at 7; R. Doc. 86-1 at 3; *see also* R. Doc. 86-3 at 10.

[67] R. Doc. 74-11 at 165; R. Doc. 86-3 at 10.

[68] R. Doc. 86-3 at 3. The parties do not dispute that Plaintiff received this status change, but the parties dispute who ordered the adjustment to his duty assignment. R. Doc. 74-1 at 8; R. Doc. 86-1 at 3.

[69] R. Doc. 74-1 at 7; R. Doc. 86-1 at 3. Defendants submit this visit took place on July 20, 2016. R. Doc. 74-1 at 7. Plaintiff submits this visit took place on July 19, 2016. R. Doc. 86-1 at 3. The medical record is dated July 19, 2016 at the top and July 20, 2016 at the bottom. R. Doc. 74-11 at 164; R. Doc. 86-3 at 9. Since Plaintiff's medical records reveal another entry on July 20, 2016, it appears this visit did indeed take place on July 19, 2016. This disputed fact is not material to the Court's decision.

[70] R. Doc. 74-1 at 8; R. Doc. 86-1 at 3.

[71] R. Doc. 74-11 at 164; R. Doc. 86-3 at 9.

[72] R. Doc. 74-1 at 8; R. Doc. 86-1 at 3.

[73] R. Doc. 74-1 at 8; R. Doc. 86-1 at 3.

[74] R. Doc. 74-1 at 8; R. Doc. 86-1 at 4.

Plaintiff again sought medical treatment on July 20, 2016 and was examined by Nurse Lesley Wheat.[75] The Healthcare Request Form filled out by Nurse Wheat reflects that Plaintiff arrived at the infirmary in a wheelchair and complained of right groin pain. The form notes Plaintiff had crutches and recommended he not participate in sports or lifting.[76] As a result of Plaintiff's repeated complaints of the same problem, Nurse Wheat reprimanded Plaintiff for malingering, since Plaintiff had already been seen by nurses and had a scheduled appointment with a doctor.[77] Plaintiff was the subject of disciplinary action as a result of this charge.[78]

Plaintiff's name appeared on the dorm call out sheet for appointments with Dr. McVea on August 11, 2016.[79] Although it is undisputed that Dr. McVea reviewed all the Healthcare Request Forms submitted by the nurses[80] and talked to Nurse Williams on July 6, 2016,[81] Dr. McVea does not concede that he knew that Plaintiff had not been able to walk or move his leg since his injury on June 30, 2016. Although it is undisputed that nurses may call a doctor at any time for immediate assistance if the nurse perceives that an inmate is having a life-threatening emergency such as a heart attack or stroke,[82] the parties dispute whether, under these circumstances, the nurses could have expedited Plaintiff's appointment.[83] It also is disputed whether Dr. McVea could have expedited

[75] R. Doc. 74-1 at 8; R. Doc. 86-1 at 4.
[76] Although the parties dispute whether Nurse Wheat accurately documented Plaintiff's complaints in the Healthcare Request Form, the parties do not dispute that Nurse Wheat completed the form for this visit. R. Doc. 74-1 at 8-9; R. Doc. 86-1 at 4. Both parties attach the Healthcare Request Form from Plaintiff's July 20, 2016 visit to their motion/opposition. R. Doc. 74-11 at 163; R. Doc. 86-3 at 8.
[77] R. Doc. 74-1 at 9; R. Doc. 86-1 at 4.
[78] R. Doc. 74-1 at 9; R. Doc. 86-1 at 4.
[79] R. Doc. 74-1 at 9; R. Doc. 86-1 at 4.
[80] R. Doc. 74-1 at 2; R. Doc. 86-1 at 2.
[81] R. Doc. 74-11 at 166; R. Doc. 86-3 at 11.
[82] R. Doc. 74-1 at 2; R. Doc. 86-1 at 2.
[83] R. Doc. 74-1 at 2; R. Doc. 86-2 at 4-7.

Plaintiff's appointment after making his initial classification for a "routine" or "urgent" callout.[84]

Dr. McVea assessed Plaintiff on August 11, 2016 and noted that he continued to complain of pain in his groin and hip, along with an inability to bear weight or to flex his hip or extend his knee.[85] Dr. McVea ordered an x-ray, taken that day, which revealed a right proximal femur intertrochanteric fracture, or right hip fracture.[86] Plaintiff was then transported to University Medical Center ("UMC") in New Orleans.[87] Doctors at UMC performed an open reduction surgery on August 15, 2016.[88] While at UMC, Plaintiff had a physical therapy session.[89]

After his discharge from UMC, Plaintiff returned to Rayburn and was placed in the infirmary for full-time medical supervision.[90] The medical orders following Plaintiff's surgery included "PT/OT recommended for toe touch weight bearing status as well as motor and strength training."[91]

On August 23, 2016, Plaintiff slipped and fell when he attempted to walk to the bathroom on his own, without notifying a nurse.[92] After the fall, Nurse Seal asked Plaintiff if he was okay, and he responded affirmatively.[93] During the fall, Plaintiff's IV line came out.[94] Nurse Seal documented that she re-secured the IV line before he proceeded to the

---

[84] R. Doc. 74-1 at 2-3; R. Doc. 86-2 at 5-7.
[85] R. Doc. 74-1 at 9; R. Doc. 86-1 at 4.
[86] R. Doc. 74-1 at 10; R. Doc. 86-1 at 4.
[87] R. Doc. 74-1 at 10; R. Doc. 86-1 at 4.
[88] R. Doc. 74-1 at 10; R. Doc. 86-1 at 4.
[89] R. Doc. 74-1 at 11; R. Doc. 86-1 at 5.
[90] R. Doc. 74-1 at 12; R. Doc. 86-1 at 5.
[91] The parties do not dispute this recommendation, since it is undisputed that Dr. McVea agreed with UMC personnel that Plaintiff would benefit from physical therapy. R. Doc. 74-1 at 11; R. Doc. 86-1 at 5. Additionally, both parties attach the order including this recommendation to their motion/opposition. R. Doc. 74-11 at 90; R. Doc. 86-3 at 5.
[92] R. Doc. 74-1 at 12; R. Doc. 86-1 at 5.
[93] R. Doc. 74-1 at 12-13; R. Doc. 86-1 at 5.
[94] R. Doc. 74-1 at 12; R. Doc. 86-1 at 5.

bathroom, changed the IV pump, and documented that the re-secured dressing "flushes well."[95] When Plaintiff woke up later, the IV line had fallen out of his arm, so a different nurse moved the IV line to his other arm.[96]

On September 22, 2016, Plaintiff was transported to Hunt Correctional Center to see a physical therapist.[97] Plaintiff did not perform any self-administered physical therapy before his appointment on September 22, 2016.[98] Plaintiff was again transported to Hunt the following month to see the physical therapist.[99] Between these two sessions, Plaintiff "started trying some" of the recommended exercises and "started doing a little bit" on his own about "once a day."[100] Plaintiff reported that the pain started to decline in this period.[101]

## LEGAL STANDARD

### A. Summary Judgment Standard

Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[102] "An issue is material if its resolution could affect the outcome of the action."[103] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing

---

[95] R. Doc. 74-1 at 13; R. Doc. 86-1 at 6.
[96] R. Doc. 74-1 at 13; R. Doc. 86-1 at 6. This nurse is not named as a Defendant.
[97] R. Doc. 74-1 at 11; R. Doc. 86-1 at 5. Defendant disputes Plaintiff's statement of uncontested material fact with respect to the frequency of availability of a physical therapist but does not dispute that Plaintiff was referred to Hunt Correctional Center for this care.
[98] R. Doc. 74-1 at 11; R. Doc. 86-1 at 5.
[99] R. Doc. 74-1 at 12; R. Doc. 86-1 at 5.
[100] R. Doc. 74-1 at 12; R. Doc. 86-1 at 5.
[101] R. Doc. 74-1 at 12; R. Doc. 86-1 at 5.
[102] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[103] *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).

the evidence."[104] All reasonable inferences are drawn in favor of the non-moving party.[105] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.[106]

Government officials may assert a qualified immunity defense in a Rule 56 motion for summary judgment. The qualified immunity defense serves to shield government officials, sued in their individual capacities and performing discretionary functions, "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[107] When evaluating the defense of qualified immunity, courts engage in a two-pronged analysis: (1) whether the official's conduct violated a constitutional right of the Plaintiff and (2) whether the official's conduct was objectively unreasonable in light of clearly established law at the time of the violation.[108] A court may conduct the two-pronged qualified immunity analysis in any sequence.[109]

Once a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff. "A plaintiff must present evidence that, viewed in the light most favorable to him, presents a genuine issue of material fact that (1) the defendant's conduct amount to a violation of the plaintiff's constitutional rights; and (2) the defendant's actions were

---

[104] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).

[105] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[106] *Hibernia Nat. Bank v. Carner*, 997 F.2d 94, 98 (5th Cir. 1993) (citing *Amoco Prod. Co. v. Horwell Energy, Inc.*, 969 F.2d 146, 147–48 (5th Cir. 1992)).

[107] *White v. Pauly*, 137 S. Ct. 548, 549 (2017) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam)); *Kinney v. Weaver*, 367 F.3d 337, 349 (5th Cir. 2004).

[108] *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Saucier v. Katz*, 533 U.S. 194 (2001).

[109] *Pearson*, 555 U.S. at 236.

'objectively unreasonable in light of clearly established law at the time of the conduct in question.'"[110] All inferences are drawn in the Plaintiff's favor.[111]

For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate."[112] "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."[113] "Officials should receive the protection of qualified immunity 'unless the law is clear in the more particularized sense that reasonable officials should be put on notice that their conduct is unlawful.'"[114] "In other words, immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"[115] "The court's focus, for purposes of the 'clearly established' analysis should be on 'fair warning': qualified immunity is unavailable 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'"[116]

The law is clearly established that prison officials inflict cruel and unusual punishment when they are deliberately indifferent to an inmate's serious medical needs.[117] "Since *Estelle v. Gamble*, state officers have been on notice that deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment."[118] An inmate can demonstrate an Eighth Amendment violation by showing that a prison official

---

[110] *Estate of Cheney v. Collier*, 560 F. App'x 271, 273 (5th Cir. 2014) (quoting *Cantrell v. City of Murphy*, 666 F.3d 911, 922 (5th Cir. 2012)).

[111] *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citations omitted).

[112] *Ashcroft v. Al-Kid*, 563 U.S. 731, 741 (2011).

[113] *Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009) (quoting *Kinney*, 367 F.3d at 350).

[114] *Id.* at 393 (quoting *Kinney*, 367 F.3d at 350).

[115] *White*, 137 S. Ct. at 549.

[116] *Wernecke*, 591 F.3d at 392 (5th Cir. 2009) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)).

[117] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see also* R. Doc. 40 at 13.

[118] *Austin v. Johnson*, 328 F.3d 204, 210 (5th Cir. 2003); *see Estelle*, 429 U.S. at 104 ("We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment.") (internal quotation and citation omitted).

"refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."[119] Because the Court finds this right is clearly established, and that deliberate indifference to a prisoner's serious medical needs is objectively unreasonable, the Court's analysis will focus on the first prong—whether Defendants violated Plaintiff's clearly established constitutional right.

## B. Qualified Immunity and the Deliberate Indifference Standard

The Eighth Amendment, made applicable to the states by the Due Process Clause of the Fourteenth Amendment, proscribes the government's implementation of cruel and unusual punishment.[120] Prison officials violate the Eighth Amendment when they demonstrate deliberate indifference to a prisoner's serious medical needs constituting an unnecessary and wanton infliction of pain.[121] "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even a laymen would recognize that care is required."[122]

To state a cognizable claim for relief under this standard, a prisoner must satisfy two requirements: "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'"[123] Second, a plaintiff must establish that the defendant possessed a culpable state of mind.[124] A prison official cannot be held liable

---

[119] *Easter v. Powell*, 467 F.3d 459, 465 (5th Cir. 2006).
[120] *Victoria W. v. Larpenter*, 369 F.3d 475, 483 (5th Cir. 2004).
[121] *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *see also Victoria W.*, 369 F.3d at 483 (finding it is well-established established that prison officials inflict cruel and unusual punishment when they are deliberately indifferent to an inmate's serious medical needs).
[122] *Gobert v. Caldwell*, 463 F.3d 339, 345 n. 12 (5th Cir. 2006).
[123] *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quotation omitted); *see also Cooper v. Johnson*, 353 F. App'x 965, 967 (5th Cir. 2009) (citing *Wilson*, 501 U.S. at 297; *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999); *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993).
[124] *Farmer*, 511 U.S. at 834.

"unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[125] "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence."[126] The Fifth Circuit has held that "a prison official's knowledge of a substantial risk of harm may be inferred if the risk was obvious."[127]

"An Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."[128] "Such a showing requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'"[129] Additionally, "[w]hen the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference."[130]

"[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not."[131] "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate

---

[125] *Id.* at 837.
[126] *Id.* at 842; *see also Estate of Cheney,* 560 F. App'x at 273 (quoting *Id.*) ("Circumstantial evidence may sufficiently establish the subjective recklessness standard because '[w]e may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious.'").
[127] *Easter*, 467 F.3d at 463.
[128] *Farmer*, 511 U.S. at 837; *see also Estate of Cheney*, 560 F. App'x at 273.
[129] *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (quoting *Easter*, 467 F.3d at 465); *see also Bohannan v. Doe*, No. 12-10231, 2013 WL 2631197, at *6 (5th Cir. June 12, 2013) (citing *Gobert*, 463 F.3d at 346).
[130] *Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir. 1989).
[131] *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted).

indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances."[132] However, a nurse who acts as a "gatekeeper for access to a physician, must be able to know when there is a risk of a serious condition that requires additional care."[133]

If the issue of qualified immunity is not decided before trial, the defense of qualified immunity may be submitted to the fact finder, who must then determine the objective legal reasonableness of the public official's conduct by construing the facts in dispute.[134] "[I]f . . . there remain disputed issues of material fact relative to immunity, the jury, properly instructed, may decide the question."[135]

## ANALYSIS

Although Defendants move for summary judgment on all claims, Defendants' memorandum in support of their motion for summary judgment does not argue that Dr. McVea is entitled to qualified immunity with respect to count one (for establishing unconstitutional procedures and policies both before and after his surgery) or that Dr. McVea or Nurse Wheat is entitled to qualified immunity with respect to count two (for failing to provide policies and procedures and failing to train or supervise subordinates both before and after his surgery).[136] Likewise, Defendants' statement of uncontested material facts does not include facts relevant to the qualified immunity of Dr. McVea with respect to count one and the qualified immunity of Dr. McVea or Nurse Wheat with

---

[132] *Goebert*, 436 F.3d at 346.
[133] *Rodrigue v. Morehouse Detention Ctr.*, No. 09-985, 2012 WL 4483438, *6 (W.D. La. Sept. 28, 2012), *aff'd sub. nom. Rodrigue v. Grayson*, 557 F. App'x 341 (5th Cir. 2014).
[134] *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011).
[135] *Presley v. City of Benbrook*, 4 F.3d 405, 410 (5th Cir. 1993).
[136] R. Doc. 74.

respect to count two.[137] As a result, the Court will not address the qualified immunity of Dr. McVea or Nurse Wheat with respect to counts one and two.

### A. Count Three: § 1983 Claims Based on Deliberate Indifference to Plaintiff's Serious Medical Needs

#### 1. Claims Against Dr. McVea Based on Deliberate Indifference to Plaintiff's Medical Needs for Failing to Timely See and Evaluate Plaintiff and Failing to Provide Treatment for a Serious Medical Need

Plaintiff brings claims against Dr. McVea under § 1983 for being deliberately indifferent to his medical needs by failing to timely see and evaluate Plaintiff despite his awareness of Plaintiff's ongoing and worsening complaints of pain and decreased mobility.[138] Plaintiff argues Dr. McVea was deliberately indifferent to Plaintiff's medical needs because he was aware of Plaintiff's condition and failed to take action to provide the appropriate treatment and did not take steps to schedule an appointment on an expedited basis or order more diagnostic testing.[139] Defendants argue Dr. McVea did not act with deliberate indifference to Plaintiff's medical needs because "the evidence shows that Dr. McVea was, at worst, wrong but thought he was right."[140]

A prison official acts with deliberate indifference when he is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists"[141] and refuses to treat a plaintiff, ignores a plaintiff, or engages in similar conduct that would clearly evince a wanton disregard for a plaintiff's serious medical needs.[142] "A serious medical need is one for which treatment has been recommended or for which the need is

---

[137] R. Doc. 74-1.
[138] R. Doc. 21 at ¶ 51.
[139] R. Doc. 86 at 35-39.
[140] R. Doc. 74-2 at 27.
[141] *Farmer*, 511 U.S. at 837.
[142] *Brewster*, 587 F.3d at 770; *see also Bohannan*, 2013 WL 2631197 at *6 (citing *Gobert*, 463 F.3d at 346).

so apparent that even a laymen would recognize that care is required."[143] A prison official's knowledge of a substantial risk of harm may be inferred if the risk was obvious.[144]

The parties dispute Plaintiff's level of pain immediately following his accident on June 30, 2016.[145] Plaintiff testified that prior to going to the infirmary on June 30, 2016, he experienced a sudden, excruciating pain that felt like he had been hit with a hammer.[146] The Healthcare Request Form completed that day by Nurse Stringer reflects that Plaintiff came to the infirmary in a wheelchair, complaining of pain to his right groin after lifting weights.[147] Plaintiff argues this form does not accurately represent his complaints of severe pain that day.[148]

The parties also dispute whether Plaintiff could walk and whether Plaintiff had full range of motion in his leg at the July 5, 2016 infirmary visit.[149] Although the Healthcare Request Form indicates Plaintiff continued to complain of right groin pain and increased pain while ambulating, the form also notes that Plaintiff was able to ambulate to the scale without assistance and had full range of motion to his right extremity.[150] Plaintiff argues this record does not accurately reflect his condition at the July 5, 2016 visit because the nurse did not watch him ambulate to the scale or examine him to determine that he had full range of motion.[151] Plaintiff testified he could get on the scale only because he rolled the wheelchair nearby and dragged himself onto the scale.[152]

---

[143] *Gobert*, 463 F.3d at 345 n.12.
[144] *Easter*, 467 F.3d at 463.
[145] R. Doc. 74-1 at 3-4; R. Doc. 86-2 at 2.
[146] R. Doc. 86-2 at 2; *see also* R. Doc. 86-4 at 51-54.
[147] R. Doc. 74-1 at 5; R. Doc. 86-1 at 3; *see also* R. Doc. 86-3 at 13. Plaintiff disputes whether this form accurately reflects his complaints and the nurse's assessment.
[148] R. Doc. 74-1 at 5-6; R. Doc. 86-1 at 2; *see also* R. Doc. 86 at 1-2.
[149] R. Doc. 74-1 at 5-6; R. Doc. 86-1 at 2-3.
[150] R. Doc. 74-11 at 168; R. Doc. 86-3 at 12.
[151] R. Doc. 86 at 2-4.
[152] R. Doc. 86-4 at 85.

The parties dispute whether Dr. McVea had subjective knowledge that Plaintiff faced a substantial risk of harm. Although it is undisputed that Dr. McVea reviewed the Healthcare Request Forms submitted by the nurses,[153] and specifically discussed Plaintiff's course of treatment with Nurse Williams on July 6, 2016,[154] Dr. McVea does not concede that he knew that Plaintiff had not been able to walk or move his leg since his injury on June 30, 2016.

The parties also dispute whether Dr. McVea could have expedited Plaintiff's appointment after making his initial classification for a "routine" or "urgent" callout.[155] Although it is undisputed that after reviewing Healthcare Request Forms, Dr. McVea decides whether to see inmates immediately or classify the request for an appointment as either an "urgent" or "routine" call out,[156] the parties dispute whether Dr. McVea is responsible for scheduling patient appointments on an expedited basis.[157]

Plaintiff has demonstrated genuine issues of material fact with respect to Dr. McVea's deliberate indifference.[158] Plaintiff's ability to walk, level of pain, and range of motion following his accident is material to a determination of whether Dr. McVea was subjectively aware of a substantial risk of harm to Plaintiff because the risk of harm was obvious.[159] Dr. McVea's subjective knowledge of Plaintiff's condition is material to a determination of whether he acted with deliberate indifference. Dr. McVea's ability and responsibility to schedule patient appointments on a more expedited basis also is material

---

[153] R. Doc. 74-1 at 2; R. Doc. 86-1 at 2.
[154] R. Doc. 74-11 at 166; R. Doc. 86-3 at 11.
[155] R. Doc. 74-1 at 2-3; R. Doc. 86-2 at 5-7.
[156] R. Doc. 74-1 at 3; R. Doc. 86-1 at 2.
[157] R. Doc. 74-1 at 2-3; R. Doc. 86-2 at 5-7.
[158] For summary judgment purposes, Plaintiff must raise a material fact issue concerning each Defendant's subjective deliberate indifference. *Tamez v. Manthey*, 589 F.3d 764, 770 (5th Cir. 2009).
[159] *Easter*, 467 F.3d at 463; *Brewster*, 587 F.3d at 770; *see also Bohannan*, 2013 WL 2631197 at *6 (citing *Gobert,* 463 F.3d at 346).

to a determination of whether Dr. McVea ignored Plaintiff's complaints or acted in a manner evincing a wanton disregard for Plaintiff's serious medical needs.[160]

The Court may grant a motion for summary judgment on the defense of qualified immunity only if, viewing the facts in the light most favorable to the plaintiff, no reasonable jury could find in favor of the plaintiff.[161] Genuine issues of material fact preclude summary judgment on the qualified immunity of Dr. McVea with respect to Plaintiff's claims against him in count three for failing to timely see and evaluate Plaintiff, failure to provide appropriate treatment, failure to schedule an appointment on an expedited basis, and failure to order diagnostic testing.[162] Summary judgment is denied on these claims.

### 2. Claims Against Nurse Stringer, Nurse Bowman, and Nurse Wheat Based on Deliberate Indifference to Plaintiff's Medical Needs for Depriving Plaintiff of Care and Impeding Access to a Physician

Plaintiff brings a claim against Nurse Stringer, Nurse Bowman, and Nurse Wheat under § 1983 for their deliberate indifference to his medical needs, alleging they engaged in a course of conduct that deprived Plaintiff of his right to reasonable and adequate medical care[163] and actively impeded him when he tried to gain access to a qualified medical professional.[164] Defendants argue Nurse Stringer, Nurse Bowman, and Nurse Wheat were not deliberately indifferent because they submitted the Healthcare Request Forms to Dr. McVea for review and, at worst, they were wrong in their nursing diagnosis and treatment plan.[165]

---

[160] *Brewster*, 587 F.3d at 770; *see also Bohannan*, 2013 WL 2631197 at *6 (citing *Gobert,* 463 F.3d at 346).
[161] *Carner*, 997 F.2d at 98 (citing *Amoco Prod. Co.*, 969 F.2d at 147–48).
[162] R. Doc. 21 at ¶ 51.
[163] *Id.* at ¶ 50.
[164] *Id.* at ¶ 52.
[165] R. Doc. 74-2 at 23, 26, 42.

A prison official acts with deliberate indifference when she is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists"[166] and refuses to treat a plaintiff, ignores a plaintiff, or engages in similar conduct that would clearly evince a wanton disregard for a plaintiff's serious medical needs.[167] "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even a laymen would recognize that care is required."[168]

Nurses who act as gatekeepers to a physician may act with deliberate indifference when they deny a prisoner access to a medical professional.[169] For example, the Fifth Circuit has upheld a finding that a nurse defendant acted with deliberate indifference when she failed to refer an inmate to the prison's medical doctor despite his complaints of extreme abdominal pain and bilious vomiting for over a week.[170] Nurses may also act with deliberate indifference when the care they provide is "so cursory as to amount to no treatment at all."[171] For example, the Eleventh Circuit upheld a finding of deliberate indifference when, despite the inmate's repeated complaints of increasing pain and extreme discomfort, nurses misdiagnosed his broken hip as muscle inflammation and treated it with muscle relaxants and bed rest for three months.[172]

The parties dispute Plaintiff's level of pain, ability to ambulate, and range of motion immediately following his accident on June 30, 2016.[173] Plaintiff testified that prior to going to the infirmary on June 30, 2016, he experienced a sudden, excruciating pain that

---

[166] *Farmer*, 511 U.S. at 837.
[167] *Brewster*, 587 F.3d at 770; *see also Bohannan*, 2013 WL 2631197 at *6 (citing *Gobert,* 463 F.3d at 346).
[168] *Gobert*, 463 F.3d at 345 n.12.
[169] *Rodrigue*, No. 09-985, 2012 WL 4483438 at *6, *aff'd. Rodrigue*, 557 F. App'x 341.
[170] *Id.*
[171] *Mandel*, 888 F.2d at 789 (citing *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985); *West v. Keve*, 571 F.2d 158, 162 (3d Cir. 1978)).
[172] *Id.* at 785-87.
[173] R. Doc. 74-1 at 3-4; R. Doc. 86-2 at 2.

felt like he had been hit with a hammer.[174] The Healthcare Request Form completed that day by Nurse Stringer reflects that Plaintiff came to the infirmary in a wheelchair, complaining of pain to his right groin after lifting weights.[175] Plaintiff argues this form does not accurately represent his complaints that day.[176] Additionally, the parties dispute Plaintiff's level of pain and ability to ambulate between his initial infirmary visit on June 30, 2016 and his next visit on July 5, 2016.[177]

The parties also dispute whether Plaintiff could walk and whether Plaintiff had full range of motion in his leg at the July 5, 2016 infirmary visit.[178] Although the Healthcare Request Form indicates Plaintiff continued to complain of right groin pain and increased pain while ambulating, the form also notes that Plaintiff was able to ambulate to the scale without assistance and had full range of motion to his right extremity.[179] Plaintiff argues this record does not accurately reflect his condition at the July 5, 2016 visit because Nurse Stringer did not watch Plaintiff ambulate to the scale or examine him to determine that he had full range of motion.[180] Plaintiff testified he could get on the scale because he rolled the wheelchair near it and dragged himself onto it.[181] He stated he "couldn't walk. They tried to get me to weigh myself. I dragged myself to the weight – to weigh myself. I dragged myself and hold onto the thing. I jumped up there on one leg because this leg is literally just, like, dead."[182] In deposition, Nurse Stringer could not recall if she actually observed

---

[174] R. Doc. 86-2 at 2; *see also* R. Doc. 86-4 at 51-54.
[175] R. Doc. 74-1 at 5; R. Doc. 86-1 at 3; *see also* R. Doc. 86-3 at 13. Plaintiff disputes whether this form accurately reflects his complaints and the nurse's assessment.
[176] R. Doc. 74-1 at 5-6; R. Doc. 86-1 at 2; *see also* R. Doc. 86 at 1-2.
[177] R. Doc. 74-1 at 5-6; R. Doc. 86-1 at 2-3.
[178] R. Doc. 74-1 at 5-6; R. Doc. 86-1 at 2-3.
[179] R. Doc. 74-11 at 168; R. Doc. 86-3 at 12.
[180] R. Doc. 86 at 2-4.
[181] R. Doc. 86-4 at 85.
[182] *Id.*

Plaintiff move to the scale or how she determined he had full range of motion.[183] When asked if anyone was looking at him as he walked to the scale, Plaintiff testified, "no."[184]

The parties dispute whether Nurse Stringer, Nurse Bowman, or Nurse Wheat had subjective knowledge that Plaintiff faced a substantial risk of harm. The Healthcare Request Forms completed by the nurses document Plaintiff's complaints of increasing pain and inability to walk or stand on his right leg, but the nurses do not concede they had subjective knowledge that Plaintiff faced a substantial risk of harm. The parties dispute whether Nurse Stringer adequately examined Plaintiff and accurately documented his complaints.[185]

The parties also dispute whether Nurse Stringer, Nurse Bowman, or Nurse Wheat could have done more to alert Dr. McVea to Plaintiff's condition and whether Nurse Stringer, Nurse Bowman, or Nurse Wheat could have sought treatment for Plaintiff on a more expedited basis. Although it is undisputed that nurses may call a doctor at any time for immediate assistance if the nurse perceives that an inmate is having a life-threatening emergency such as a heart attack or stroke,[186] the parties dispute whether, under the circumstances in this case, the nurses could have expedited Plaintiff's appointment.[187]

Plaintiff has demonstrated genuine issues of material fact with respect to the deliberate indifference of Nurse Stringer, Nurse Bowman, and Nurse Wheat.[188] The resolution of factual disputes will determine whether they had subjective knowledge that Plaintiff faced a substantial risk of harm, and, as a result, acted with deliberate

---

[183] R. Doc. 74-4 at 48-49.
[184] R. Doc. 86-4 at 85.
[185] R. Doc. 74-1 at 5-6; R. Doc. 86-1 at 2.
[186] R. Doc. 74-1 at 2; R. Doc. 86-1 at 2.
[187] R. Doc. 74-1 at 2; R. Doc. 86-2 at 4-7.
[188] For summary judgment purposes, Plaintiff must raise a material fact issue concerning each Defendant's subjective deliberate indifference. *Tamez*, 589 F.3d at 770.

indifference. Plaintiff's level of pain, range of motion, and ability to ambulate are material to a determination of whether the nurses were subjectively aware that Plaintiff faced a substantial risk of harm because the risk was obvious.[189] The ability of Nurse Stringer, Nurse Bowman, and Nurse Wheat to alert Dr. McVea of Plaintiff's condition or seek expedited treatment for Plaintiff is material to a determination of whether the nurses ignored Plaintiff's complaints or acted in a manner evincing a wanton disregard for Plaintiff's serious medical needs by providing treatment that was so cursory as to amount to no treatment at all.[190]

Summary judgment is denied with respect to the defense of qualified immunity for Plaintiff's claims against Nurse Stringer, Nurse Bowman, and Nurse Wheat in count three for engaging in a course of conduct that deprived Plaintiff of his right to reasonable and adequate medical care and for actively impeding Plaintiff when he tried to gain access to a qualified medical professional.[191]

### 3. Claims Against All Defendants Based on Deliberate Indifference to Plaintiff's Post-Operative Medical Need for Physical Therapy, Assistance, and Supervision

In count three, Plaintiff alleges Nurses Stringer, Bowman, Wheat, and Seal acted with deliberate indifference by "abandoning" Plaintiff "while he was in a vulnerable post-operative state by leaving him unattended and unsupervised on an infirmary unit."[192] Plaintiff argues that after his surgery Defendants Stringer, Bowman, Wheat, and Seal

---

[189] *Easter*, 467 F.3d at 463; *Brewster*, 587 F.3d at 770; *see also Bohannan*, 2013 WL 2631197 at *6 (citing *Gobert,* 463 F.3d at 346).

[190] *Brewster*, 587 F.3d at 770; *Mandel*, 888 F.2d at 789; *see also Bohannan*, 2013 WL 2631197 at *6 (citing *Gobert,* 463 F.3d at 346).

[191] R. Doc. 21 at ¶¶ 50, 52.

[192] *Id.* at ¶ 53. In count two, Plaintiff alleges that Nurse Wheat failed to provide policies and procedures and failed to train and supervise her subordinates both before and after his surgery. This section deals only with Plaintiff's claim against Nurse Wheat in count three for her failure to attend to Plaintiff following his surgery.

failed to provide him with assistance performing basic physical therapy exercises, supervision getting out of bed or moving, or instruction about how to get in and out of bed without disrupting his stitches, despite an order recommending "PT/OT for toe touch weight bearing status as well as motor and strength training."[193] He contends that without basic mobility assistance, physical therapy exercises, and supervision, he remained largely immobile in the week following his surgery, causing a rhabdomyolysis.[194] Plaintiff argues the nurses did not carry out these orders and Dr. McVea did not take any action to implement or see that the nurses carried out these orders.[195] Additionally, Plaintiff contends Nurse Seal did not properly monitor him, which resulted in Plaintiff falling and dislodging his IV when he attempted to use the restroom without assistance.[196]

A prison official acts with deliberate indifference to a Plaintiff's serious medical need when she is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists"[197] and refuses to treat a Plaintiff, ignores a Plaintiff, or engages in similar conduct that would clearly evince a wanton disregard for Plaintiff's serious medical needs.[198] A serious medical need is one for which treatment has been recommended or for which the need is obvious.[199] However, '[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate

---

[193] R. Doc. 86-3 at 15.

[194] R. Doc. 86 at 9.

[195] *Id.* at ¶ 50. Plaintiff additionally alleges in count three that Dr. McVea acted with deliberate indifference to his medical needs because he failed to provide Plaintiff with necessary nursing supervision, support, and rehabilitation following his surgery. *Id.* at ¶ 51. This is duplicative of the allegations against Dr. McVea in counts one and two.

[196] R. Doc. 86 at 29.

[197] *Farmer*, 511 U.S. at 837.

[198] *Brewster*, 587 F.3d at 770; *see also Bohannan*, 2013 WL 2631197 at *6 (citing *Gobert,* 463 F.3d at 346).

[199] *Gobert*, 463 F.3d at 345 n.12.

indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances."[200]

Accepting these facts as true, and viewing the evidence in the light most favorable to Plaintiff, no reasonable jury could find that any of the Defendants acted with deliberate indifference with respect to Plaintiff's post-operative need for mobility assistance, physical therapy exercises, and supervision.[201] Plaintiff has not presented facts to demonstrate that any of the Defendants were subjectively aware he faced a substantial risk of harm, nor was the risk of harm so obvious that even a layman would be aware of it.[202] Even if Plaintiff did face a substantial risk of harm, he has not presented facts to demonstrate that any of the Defendants' conduct was so egregious that it rose to the level of deliberate indifference, nor has Plaintiff presented facts to demonstrate that any of the Defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."[203] At most, the Defendants were negligent in failing to provide Plaintiff with basic mobility assistance, physical therapy exercises, and support in the infirmary at Rayburn, and at most, Nurse Seal was negligent in failing to monitor Plaintiff more closely during the time of his fall.[204]

Summary judgment is granted with respect to Plaintiff's claims in count three against all Defendants for their deliberate indifference to Plaintiff's post-operative need for basic mobility assistance, physical therapy exercises, and supervision.

---

[200] *Goebert*, 436 F.3d at 346.
[201] *Carner*, 997 F.2d at 98.
[202] *Gobert*, 463 F.3d at 345 n.12.
[203] *Easter*, 467 F.3d at 465; *Brewster*, 587 F.3d at 770; *see also Bohannan*, 2013 WL 2631197 at *6 (citing *Gobert,* 463 F.3d at 346).
[204] *Goebert*, 436 F.3d at 346.

### 4. Claim Against Nurse Wheat for Failing to Schedule Post-Operative Physical Therapy Appointments

In count three, Plaintiff alleges Nurse Wheat acted with deliberate indifference in failing to schedule and maintain appointments for medically necessary post-operative physical therapy and rehabilitation, despite medical orders to do so.[205] Plaintiff alleges Nurse Wheat did not act to ensure he received a timely physical therapy appointment and did not act to expedite his scheduled appointment.[206]

The Fifth Circuit has found, "[w]hile the intentional failure to schedule an appointment with a medical specialist may amount to deliberate indifference when it causes substantial harm, the negligent failure to schedule an appointment does not."[207] In a similar case against staff at Rayburn, this Court found the defendant was entitled to qualified immunity, despite a one-month delay in requesting an appointment for an inmate.[208]

Although the parties dispute whether Nurse Wheat was responsible for scheduling Plaintiff's physical therapy appointments and whether she could expedite such an appointment, this fact is not material because, viewing the facts in the light most favorable to Plaintiff, no reasonable jury could find Nurse Wheat acted with deliberate indifference. Plaintiff has not pointed to facts to demonstrate that Nurse Wheat intentionally failed to schedule or delayed his appointment.[209] Plaintiff did receive post-operative physical therapy at the Hunt Correctional Center on September 22, 2016, approximately one month after his discharge from the hospital, and again in October of 2016.[210] At most,

---

[205] R. Doc. 21 at ¶ 54.
[206] R. Doc. 86-3 at 12-13.
[207] *Thomas v. Carter*, 593 F. App'x 338, 344 (5th Cir. 2014).
[208] *Addison v. McVea*, 2015 WL 3966104, at *15 (E.D. La. June 30, 2015).
[209] *See Thomas*, 593 F. App'x at 344; *see also Brewster*, 587 F.3d at 770.
[210] R. Doc. 74-1 at 11-12; R. Doc. 86-1 at 5.

Nurse Wheat was negligent in failing to schedule Plaintiff for an appointment on a more expedited basis.[211] Summary judgment is granted with respect to Plaintiff's claim in count three against Nurse Wheat for failing to schedule and maintain his post-operative physical therapy appointments.

## B. Plaintiff's Claims Have Not Prescribed

In their motion for summary judgment, Defendants re-urge their argument that Plaintiff's claims based on conduct that occurred prior to August 23, 1016 have prescribed.[212] The Court previously addressed this argument in its order on Defendants' Motion to Dismiss.[213] Defendants argue further discovery makes it clear that Plaintiff's pre-surgery claims are distinct from his post-surgery claims.[214] Defendants argue, "once Plaintiff was successfully diagnosed and surgery was performed, there was a cumulative amount of alleged action or inaction on the part of Defendants to represent a complete cause of action."[215]

The Court confirms its prior ruling that the continuing violation theory applies to Plaintiff's claims. The statute of limitations for claims regarding a continuing wrong does not commence until the cause of the damage is abated.[216] Plaintiff's injuries continued to degenerate throughout the course of his incarceration each day Defendants failed to provide him with medically necessary care. The Court's finding of deliberate indifference is inextricably linked with the fact that Plaintiff suffered unnecessarily *because* of the

---

[211] *See Thomas*, 593 F. App'x at 344.
[212] R. Doc. 74-2 at 36.
[213] R. Doc. 46 (Order and Reasons); R. Doc. 41 (Motion to Dismiss).
[214] R. Doc. 74-2 at 37.
[215] *Id.*
[216] *See Neel v. Rehberg*, 577 F.2d 262, 263–64 (5th Cir. 1978); *Brown v. Foti*, No. 92-2728, 1993 WL 149858, at *3 n.27 (E.D. La. April 30, 1993).

unreasonably prolonged period of time Defendants allowed Spikes to suffer with a severe medical need.

Because Plaintiff's claims are based on a "cumulation of a series of related events," as opposed "to a series of related but discrete, discriminatory acts,"[217] the prescriptive period for his § 1983 claims began to run only once the continuing cause of the harm abated, which, in this case, was well after August 23, 2016.[218] As a result, Plaintiff's § 1983 claims were timely filed on August 23, 2017, and the Court denies Defendants' motion for summary judgment based on prescription.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the motion for summary judgment filed by Defendants Dr. Casey McVea, Lesley Wheat, Wendy Seal, R. Bowman, and Paula Stringer, be and hereby is **GRANTED IN PART AND DENIED IN PART**.

**IT IS ORDERED** that the motion for summary judgment with respect to all Defendants' defense of qualified immunity to count three for their deliberate indifference to Plaintiff's post-operative need for basic mobility assistance, physical therapy exercises, and supervision [219] is **GRANTED.**[220]

---

[217] *Brooks v. Menifee*, 2010 WL 7827470, at *3 (W.D. La. Sept. 27, 2010).
[218] *See* R. Doc. 21 at ¶¶ 29–31. Presumably, the violation of Spikes' Eighth Amendment rights continued until his release from Rayburn. *See Brown*, 1993 WL 149858, at *3. In his complaint, Spikes does not note when he was released; however, the latest date on which Spikes specifically alleges he received constitutionally deficient medical treatment is October 27, 2016, when he "returned to Rayburn with the orders to allow continued use of the straight cane as needed and to continue physical therapy to promote full return of range of motion and strength to his hip," but that Defendants "failed schedule a follow up appointment to return [him] to the orthopedic clinic" and "failed to schedule and maintain physical therapy appointments." R. Doc. 21 at ¶¶ 29–31. Thus, the earliest date on which Spikes' causes of action could have begun to accrue is October 27, 2016; therefore, Spikes' Complaint filed August 23, 2017 is timely.
[219] R. Doc. 21 at ¶¶ 53.
[220] Plaintiff's claims against Dr. McVea in count one (for establishing unconstitutional procedures and policies both before and after his surgery) and against Dr. McVea and Nurse Wheat in count two (for failing to provide policies and procedures and failing to train or supervise subordinates both before and after his surgery) remain. To the extent any claim asserted in count three is duplicative of a claim raised in count one or count two, such claim remains.

**IT IS FURTHER ORDERED** that the motion for summary judgment with respect to Nurse Wheat's defense of qualified immunity to count three for her deliberate indifference to Plaintiff's need for post-operative physical therapy appointments[221] is **GRANTED**.

**IT IS FURTHER ORDERED** that the motion for summary judgment with respect to Dr. McVea's, Nurse Stringer's, Nurse Bowman's, and Nurse Wheat's defense of qualified immunity to count three for conduct before Plaintiff's surgery[222] is **DENIED**.

**New Orleans, Louisiana, this 27th day of December, 2018.[223]**

_____

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[221] R. Doc. 21 at ¶ 54.

[222] R. Doc. 21 at ¶¶ 50-51.

[223] "The district court's decision to deny qualified immunity on a motion for summary judgment is not appealable if it is based on a claim regarding the sufficiency of the evidence. Therefore, if the district court concludes that the summary judgment record raises a genuine issue of material fact with respect to whether qualified immunity is applicable, [as in this case,] then that decision is not immediately appealable." However, the Court of Appeals may accept the Plaintiff's version of the facts as true and consider "whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported for purposes of summary judgment." *Gobert*, 463 F.3d at 344-45 (internal citations and quotations omitted).